## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JOHN CZERNIAK, on behalf of himself and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | DEMAND FOR JURY TRIAL |
| BAYER HEALTHCARE LLC, and ELANCO ANIMAL HEALTH, INC., | |
| Defendants. | |

Plaintiff John Czerniak ("Plaintiff"), brings this consumer class action lawsuit against Defendants Bayer Healthcare LLC and Elanco Animal Health, Inc. (collectively, "Defendants"), individually and on behalf of all others similarly situated. Plaintiff alleges the following based on personal knowledge as to his own acts and based upon the investigation conducted by his counsel as to all other allegations:

### INTRODUCTION

1.      Many Americans have pets and cultivate strong, loving bonds with them as members of their families. As a result, pet owners are very protective of their pets and are passionate about their health and well-being.  When it comes to choosing pet-related products, such as flea and tick collars, pet owners are understandably selective.

2.      Defendants Bayer Healthcare LLC and Elanco Animal Health, Inc. are manufacturers, marketers, advertisers, distributors, and sellers of a variety of pet-related products. Since 2012, Defendants have taken advantage of the trust that loyal pet owners place in their companies and products by actively manufacturing, marketing, advertising, distributing, and selling dangerous flea and tick collars with the capacity to injure, maim, or even kill the pets that wear, or are exposed to, them.

3.      Specifically, Defendants' Seresto brand flea and tick collars ("Seresto Collars" or the "Products") purport to prevent fleas and ticks on dogs and cats by releasing small amounts of

pesticides onto the pets over time. However, the harm inflicted by Seresto Collars far outweighs any benefits of flea or tick prevention that the Products might offer.

4.    According to the Environmental Protection Agency ("EPA"), since 2012,[1] Seresto Collars have been responsible for over 75,000 reported incidents—including the deaths of 1,698 pets and nearly 1,000 incidents involving human harm.

5.    Since 2012, when the Seresto Collars were first distributed and sold into the consumer marketplace, Defendants have received an overwhelming number of notices regarding the harm that their Products can cause, have caused, and will continue to cause.[2] Despite ample opportunity to warn consumers of the harm that Seresto Collars present to pets, pet owners, and their families, Defendants have refused to disclose or otherwise inform consumers of these risks, which are known to Defendants but unknown to consumers. Even more, despite knowing about the dangers associated with the Seresto Collars, Defendants continue to manufacture and sell Seresto Collars to unsuspecting pet owners in order to profit at the expense of pet owners and their pets.

6.    In March 2021, an investigative exposé reported on the gravity of the risks associated with Seresto Collars, with incidents going all the way back to the initial release of the Products in 2012.[3] The report revealed that, "[t]he pesticide is supposed to kill fleas, ticks, and other pests but also be safe for cats and dogs. But thousands of pets are being harmed."[4] This report widely exposed Defendants' improper conduct, which they had long concealed from the public and pet owners, leading to a slew of news articles and other coverage.[5] Despite this latest exposure of the serious risks associated with their Products, Defendants continue to market and sell the dangerous Seresto Collars and have yet to admit to the consuming public that these serious risks exist.

---

[1] https://investigatemidwest.org/2021/03/02/popular-flea-collar-linked-to-almost-1700-pet-deaths-the-epa-has-issued-no-warning (last visited Apr. 6, 2021).

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *E.g.*, https://www.usatoday.com/story/news/investigations/2021/03/02/seresto-dog-cat-collars-found-harm-pets-humans-epa-records-show/4574753001 (last visited Apr. 6, 2021).

7.      Additionally, on March 17, 2021, Representative Raja Krishnamoorthi, the chairman of the House Subcommittee on Economic and Consumer Policy, wrote directly to Defendant Elanco Animal Health, Inc. demanding that it voluntarily recall Seresto Collars from the market due to the serious risks associated with the Products.[6] Despite this formal request, Defendant Elanco Animal Health, Inc. has not voluntarily recalled the Seresto Collars, has continued to deny the existence of the serious safety risks posed by the Seresto Collars, and has continued to sell the Seresto Collars to pet owners without disclosing the serious risks they pose to pets.[7] Defendants continue to deny wrongdoing and denying the fact that the Products pose serious safety ricks to consumers and their pets, stating that incident reports—even in such high numbers—do not implicate the Seresto Collars as the cause of harm to pets, and that reporting on these many incidents of injury is nothing more than "misleading media coverage."[8]

8.      Plaintiff brings this class action to make whole the pet owners who unwittingly purchased Seresto Collars for their pets, without any knowledge of the serious safety risks that the Products posed to their pets and themselves. Plaintiff does not seek recovery in this action for personal injuries, wrongful death, or emotional distress on behalf of himself or on behalf of the Class Members.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount-in-controversy, exclusive of costs and interest, exceeds the sum of $5 million in the aggregate, in total there are well over 100 members of the proposed Class that are known to exist, and this is a class action in which complete diversity exists between one Plaintiff and one Defendant—namely, that Plaintiff John Czerniak is a resident of Florida, while Defendant Bayer Healthcare LLC is a Delaware corporation headquartered in New Jersey,

---

[6] *Available at* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-03-17.RK%20to%20Simmons-Elanco%20re%20Pet%20Collars.pdf (last visited Apr. 6, 2021).

[7] https://www.usatoday.com/story/news/investigations/2021/03/18/congressional-subcommittee-seeks-recall-seresto-flea-tick-collar/4759904001 (last visited Apr. 6, 2021); https://investigatemidwest.org/2021/03/18/house-subcommittee-seeks-voluntarily-recall-of-seresto-flea-and-tick-collars (last visited Apr. 6, 2021).

[8] https://investigatemidwest.org/2021/03/18/house-subcommittee-seeks-voluntarily-recall-of-seresto-flea-and-tick-collars (last visited Apr. 6, 2021).

and Defendant Elanco Animal Health, Inc. is an Indiana corporation headquartered in Indiana. This Court has personal jurisdiction because Plaintiff purchased Defendants' Products in this District, the harm to Plaintiff occurred in this District, Defendants directed their Products into the stream of commerce, which ended up in this District, and Defendants engage in marketing and advertising in this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Plaintiff resides in this District and is a resident of the State of Florida.

## PARTIES

**Plaintiff**

11.     Plaintiff John Czerniak is a resident of the State of Florida. On or about January 17, 2021, while a Florida resident, he purchased a Seresto Collar for his dog, Romeo, at a Walmart store in Boynton Beach, Florida.

**Defendants**

12.     Defendant Bayer Healthcare LLC is the former owner of the Seresto brand of collars. Defendant Bayer Healthcare LLC is a Delaware corporation and is headquartered in Whippany, New Jersey.

13.     Defendant Bayer Healthcare LLC sold the Products at issue from 2012 (when the product was introduced onto the market) to 2020, after which Defendant Bayer Healthcare LLC sold the Seresto brand to Defendant Elanco Animal Health, Inc.

14.     Defendant Elanco Animal Health, Inc. is the current owner of the Seresto brand. Defendant Elanco Animal Health, Inc. is an Indiana corporation and is headquartered in Greenfield, Indiana.

15.     Since its purchase of the Seresto brand in 2020, Defendant Elanco Animal Health, Inc. has consistently sold the Products at issue.

## PLAINTIFF'S FACTUAL ALLEGATIONS

16.     Plaintiff John Czerniak is a resident of the State of Florida. He purchased a Seresto Collar for his dog, Romeo, as part of Romeo's health regimen in order to prevent Romeo from being infested and/or harmed by fleas and ticks, and because it claimed to be odorless and non-

greasy. Mr. Czerniak purchased two Seresto Collars, most recently on January 17, 2021, from Walmart in Boynton Beach, Florida.

17.     At the time of purchase, Plaintiff Czerniak reviewed the Products' packaging and retail information. The Seresto Collars' packaging and descriptions stated that the Products were a safe and effective means of flea and tick prevention for dogs. Plaintiff purchased the Products with the intention of ensuring his dog's health and safety.

18.     After receiving the Products, Plaintiff Czerniak placed the Seresto Collar around his dog's neck as directed by the manufacturer's instructions. However, shortly after putting the Product on, his dog, Romeo, suffered seizures on several occasions and also experienced skin irritation.

19.     Plaintiff Czerniak understandably grew concerned and stopped using the Product. Romeo's seizures and skin irritation ceased after Plaintiff Czerniak removed the Seresto Collar from Romeo's neck.

20.     The Product harmed both Plaintiff Czerniak and his dog, Romeo. The Product caused his dog to experience seizures and skin irritation.

21.     Plaintiff Czerniak was also harmed economically because he spent money on the Product, which did not perform as advertised. He did not receive the Products he intended to purchase: flea and tick collars which were fit for their ordinary purpose—the safe administration of flea and tick preventatives to his dog. He did not receive the benefit of his bargain.

22.     Had Defendants disclosed the existence of the serious safety risks associated with Seresto Collars, including seizures and skin irritation, Plaintiff Czerniak either would not have purchased the Product for his dog, Romeo, or else would have paid significantly less for it. He did not receive the benefit of his bargain.

23.     If the Seresto Collars functioned as advertised—and did not pose any serious risk to his dogs, or to others, associated with the Products' use—Plaintiff Czerniak would likely purchase or would consider purchasing additional Seresto Collars again in the future. Alternatively, if the Court were to issue an injunction ordering Defendants to comply with advertising and warranty laws, and to remediate the serious and ongoing safety risks associated

with Seresto Collars, Plaintiff Czerniak would likely purchase or would consider purchasing additional Seresto Collars again in the future.

<strong><u>GENERAL FACTUAL ALLEGATIONS</u></strong>

**History of Seresto Collars**

24.     The United States consumer market for pet products is substantial.  Pet owners purchase a wide variety of products to ensure the health and safety of their pets.

25.     An important element of a pet's health regimen includes flea and/or tick preventative medication. One such purported flea and tick preventative medication is Seresto, a brand of pet collars that is marketed as safe for the pet, but capable of killing and repelling fleas and ticks when worn by the pet.

26.     Seresto Collars were first produced by Defendant Bayer Healthcare LLC in 2012. The Products quickly gained traction in the pet products industry, selling over $300 million worth of Seresto Collars in 2019, when the brand was still owned by Defendant Bayer Healthcare LLC.[9]

27.     In 2020, Seresto was sold to Defendant Elanco Animal Health, Inc.[10] The acquisition of the Seresto brand was a key component in Elanco Animal Health's $7.6 billion acquisition of Defendant Bayer Healthcare LLC's pet products division.[11]

28.     Elanco still owns the Seresto brand today, and Elanco still sells the Product to pet owners seeking safe and effective flea and tick prevention devices.

**How Seresto Collars Work**

29.     Flea and tick prevention methods are an integral part of a dog's health regimen, as fleas and ticks can cause great harm to pets, including severe skin irritation, skin damage, or Lyme disease, among other health problems. There are a few different types of flea and tick prevention methods, including prophylactic pills, the application of prophylactic serums to the pet's skin and/or fur, and collars like those sold by Defendants under the Seresto brand name.

---

[9] https://investigatemidwest.org/2021/03/02/popular-flea-collar-linked-to-almost-1700-pet-deaths-the-epa-has-issued-no-warning/.

[10] *Id.*

[11] *Id.*

30.     Seresto Collars time release two different pesticides—imidacloprid and flumethrin—in a "cocktail" that works to prevent and/or kill fleas and ticks. These two pesticides work in tandem.[12] As the pet wears the collar over time, more of the pesticide cocktail is released, both onto the pet itself, specifically, and into the surrounding area, generally. After a given period of time, the Product runs out of the pesticide cocktail and loses its efficacy. As a result, the pet owner must purchase additional Seresto Collars in order to continue the flea and tick prevention for his or his pet.

31.     One of the pesticides used in Seresto Collars, imidacloprid, is commonly used as an application on crops. Imidacloprid belongs to the neonicotinoid class of insecticides and is connected with "massive die-offs" of certain non-targeted insects, including bees and butterflies.[13] Evidence shows that these pesticides can cause harm to mammals as well.[14]

32.     The other pesticide used in Seresto Collars, flumethrin, is only actively included as an ingredient in one product—Seresto Collars—according to EPA documents.[15]

**Harm Caused by Seresto Collars**

33.     Since Seresto Collars entered the pet product market in 2012, they have inflicted an unparalleled amount of harm onto pets and pet owners alike. The EPA reports *over 75,000 health-related incidents* tied to the use of Seresto products from 2012 through June 2020.[16]

34.     This number of incidents tied to a single readily available consumer product is particularly concerning, not only because of the significant *quantity* of reported incidents, but also because of the *magnitude* of the harm Seresto Collars has caused—death to a reported 1,698 pets and nearly 1,000 cases of actual physical harm to pet owners.[17] The harm caused by Seresto Collars is due to the dangerous chemical cocktail of pesticides that are used in the Products.

35.     Consequently, by design, the Seresto Collars contain dangerous, unsafe chemical pesticides, which over an 8-month period slowly and continuously release chemicals onto the pet

---

[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*

wearing the Seresto Collar and into the surrounding environment. These chemicals are unsafe and pose a serious, continuous risk of injury to the pet wearing the collar, to other pets exposed to the collar, and to the pet owner and others exposed to the collar.

36.     This risk of serious harm exists at all times, from the Seresto Collar's manufacture until all pesticides on/in the Product have been released, which—according to the Product's packaging—lasts at least 8 months after the Seresto Collar is placed on the pet.

37.     Accordingly, the serious risk of harm to pets and pet owners exists within the Product from the moment the Seresto Collars are manufactured (and when the Products leave Defendants' control), prior to and at the point of sale, and for 8 months after initial application to the pet.

38.     Experts, such as Nathan Donley, a senior scientist at the Center for Biological Diversity and an expert on U.S. pesticide regulation, said that the reported incidents are actually "just the tip of the iceberg" for Seresto.[18] Donley believes that a slew of incidents remain unreported due to the fact that pet owners must make the connection between the incidents and the Seresto Collar. Donley explained, "[m]ost of the time, people are not going to make the connection or they're not going to take an hour out of the day and figure out how to call and spend time on hold [to report it to the EPA]."[19]

39.     Donley, who is also a former cancer researcher, also stated that the number of incidents is overwhelming: "[y]ou don't even see these kinds of numbers with many agricultural chemicals. . . . For whatever reason, this combination [of pesticides used in Seresto Collars] is just really nasty."[20] Donley noted that he had "never seen any product that had 75,000 incidents."[21]

40.     Karen McCormack, a retired EPA employee, stated that Seresto Collars have the most incidents he has ever seen related to a pesticide pet product.[22]

---

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

41.     And in a letter, Representative Krishnamoorthi explained that "the actual number of deaths and injuries [from the Products] is [likely] much greater."[23]

42.     Beyond the obvious harm to pets, the harm to consumers is also substantial. Consumers have been economically injured through purchasing an unreasonably dangerous product that does not perform as advertised. Unwitting consumers, including Plaintiff and Class Members, did not receive the benefit of their bargain when purchasing the Products. Plaintiff disclaims any intent to seek recovery for personal injuries, wrongful death, or emotional distress suffered by himself, his pets, or on behalf of Class Members.

43.     Pets who wear Seresto Collars—or are otherwise exposed to the Products—can suffer injuries, including rashes, increased lethargy, vomiting, loss of appetite, seizures, or even death.[24]

44.     But injuries caused by the Products are not limited to pets. A 2019 EPA assessment of human health risk associated with Seresto Collars included 907 incidents, accumulated between 2013 and 2018, in which injuries to humans were reported. This assessment determined that, of these 907 incidents, 19 were considered "severe."[25]

45.     Examples of the human incidents listed by the EPA include:

- A 12-year-old boy who slept in a bed with a dog wearing a collar started having seizures and vomiting. He had to be hospitalized.

- A 67-year-old woman who slept in a bed with a dog wearing a collar reported having heart arrhythmia and fatigue.

- A 43-year-old man put collars on eight dogs and slept in the same bed as four of the dogs. A week later, he developed ear drainage and nasal and throat irritation and was told by a doctor that he had a hole in his ear drum. He removed the dog collars and the symptoms went away. He later reapplied the collars and the symptoms returned."[26]

---

[23] *Available at* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-03-17.RK%20to%20Simmons-Elanco%20re%20Pet%20Collars.pdf (last visited Apr. 6, 2021).

[24] *Id.*

[25] *Id.*

[26] *Id.*

46.     Although this action specifically disclaims seeking damages for personal injuries, these examples demonstrate that the Seresto Collars are not safe and that a consumer who purchases the Product is not receiving the benefit of his or his bargain.

**Representations and Omissions by Defendants Regarding Seresto Collars**

47.     Seresto Collars are marketed as a part of a pet's regular health regimen—as flea and tick prevention for dogs and cats—and are sold in "tin" packaging. All Seresto product packaging includes representations regarding Seresto Collars, which leads reasonable consumers to believe that the Products will be safe for their pets and themselves as the Product's sole purpose is to keep pets safe from fleas and ticks, since fleas and ticks can cause pets to suffer from severe itching, skin damage, or Lyme disease, among other ailments. Contrary to these representations, the Seresto Collars are anything but safe for Pets, as they can and have caused Pets (and their owners) to suffer serious injuries.

48.     d







49.    Seresto Collars are advertised as providing flea and tick prevention through "continuous release."[27] That is, once the Seresto Collar is placed on the pet, it continuously releases chemical pesticides onto the pet and into the surrounding environment.

50.    The Seresto Collar product tin includes additional information on the back label. The back label includes warnings relating to the storage and disposal of Seresto Collars. Examples of the back label of the Seresto Collar product tin are included below.[28] However, as shown below, the back label—and the product tin as a whole—fails to include any warnings relating to the serious safety risks that Seresto Collars pose to pets and pet owners, as described above.



---

[27] https://www.amazon.com/Seresto-collar-8-month-prevention-weeks/dp/B00B8CG5NK (last visited March 26, 2021).

[28] https://www.amazon.com/Seresto-flea-collar-8-month-prevention/dp/B00B8CG602 (last visited Apr. 6, 2021) (for dogs); https://www.amazon.com/Seresto-collar-8-month-prevention-weeks/dp/B00B8CG5NK (last visited Apr. 6, 2021) (for cats).



51.     Consequently, the Seresto Collars' product packaging includes no mention of the serious risks posed by the Product to the pet wearing the collar, to other pets nearby, to the pet owner, or to others in the immediate vicinity, including family members, including risk of irritation, rashes, hair loss, gastrointestinal problems, seizures, and even death.

52.     Similarly, Defendants' marketing of Seresto Collars never discloses the serious risks posed by the Product to the pet wearing the collar, to other pets nearby, to the pet owner, or to others in the immediate vicinity, including family members, including risk of irritation, rashes, hair loss, gastrointestinal problems, seizures, and even death. No reasonable consumer would purchase the Products if the risks were noted on the packaging or other advertising.

53.     As discussed herein, Defendants have long known about the dangers associated with use of the Products, since introduction of the Products into the consumer marketplace in 2012. However, Defendants have actively and fraudulently concealed this information from unwitting consumers. Accordingly, consumers remain unaware of these serious risks, because Defendants refuse to disclose this important information—or otherwise actively conceal it.

**Defendants' Knowledge of the Risks Associated with Seresto Collars**

54.     Defendants knew, or otherwise should have known, about the serious risks posed by Seresto Collars based upon: (1) their own internal testing and surveys, (2) EPA testing and surveys, (3) numerous consumer complaints lodged directly with Defendants, (4) numerous consumer complaints lodged to retailers, (5) numerous consumer complaints and reports lodged with the EPA, (6) numerous consumer complaints on online fora, and (7) media reports, dating back to 2012.

55.     Defendant Bayer Healthcare LLC knew, or otherwise should have known, about the serious risks posed by Seresto Collars prior to its sale of the Seresto brand to Defendant Elanco Animal Health, Inc. in August 2020. Prior to the sale of the Seresto brand, Defendant Bayer Healthcare LLC had a duty to investigate the numerous complaints relating to the Products. Defendant Bayer Healthcare LLC also had an obligation to disclose to Defendant Elanco Animal Health, Inc. the serious safety risks the Products pose to consumers and their pets as part of the sale of the Seresto brand.

56.     Defendant Elanco Animal Health, Inc. knew, or otherwise should have known, about the serious risks posed by Seresto Collars during its purchase of the Seresto brand in August 2020. Immediately prior to its purchase of the brand, in its exercise of due diligence, Defendant Elanco Animal Health, Inc. investigated, or otherwise should have investigated, the numerous complaints relating to the Products. Further, Defendant Elanco Animal Health, Inc. learned, or otherwise should have learned, from Defendant Bayer Healthcare LLC of the serious safety risks the Products pose to consumers and their pets, pursuant to Defendant Bayer Healthcare LLC's obligations as part of the sale of the Seresto brand.

57.     Despite Defendants' extensive knowledge of the serious safety risks posed by Seresto Collars to consumers and their pets, Defendants have refused to disclose—or otherwise actively conceal—the dangers of the Seresto Collars (which exist when the Products leave Defendants' control, prior to, and at the point of sale), despite marketing the Products as a safe means of flea and tick prevention for pets, as part of a pet's health regimen.

## TOLLING OF THE STATUTES OF LIMITATIONS

58.     <u>Discovery Rule</u>. Plaintiff's respective statutes of limitation accrued upon discovery that the Seresto Collar he had purchased was defective in that this Product contained serious safety risks which Defendants had not disclosed to Plaintiff prior to purchase, or at any other point. While Defendants knew and concealed the fact that the Seresto Collars posed serious safety risks, Plaintiff and Class Members could not and did not discover this fact through reasonable diligent investigation until after their pets were first injured, or otherwise showed symptoms of harm related to the Seresto Collars. Even then, following recent congressional calls for Defendant Elanco Animal Health, Inc. to voluntarily recall the Products, it has refused to do so and has continued to actively deny that the Products pose serious safety risks to consumers and pets. Defendant Bayer Healthcare LLC has also denied wrongdoing.

59.     <u>Active Concealment Tolling</u>. Any statutes of limitations are tolled by Defendants' knowing and active concealment of the fact that the Seresto Collars pose a serious, continuous safety risk to consumers and pets.  Defendants had actual knowledge for years that the Seresto Collars are dangerous to pets and their owners. Defendants kept Plaintiff and Class Members ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on the part of Plaintiff or the proposed Class. Although Defendants were aware of the dangers associated with use of the Seresto Collars, they took no steps to warn Plaintiff or Class Members of these dangers.  At least by 2012, if not earlier, Defendants received knowledge that the Seresto Collars were dangerous.  Despite this knowledge, Defendants fraudulently concealed the fact that the Seresto Collars are dangerous, and despite having a duty to disclose the existence of these dangers.  Defendants made affirmative misrepresentations to consumers during the sale of the Seresto Collars, leading reasonable consumers to believe the Products were safe for their pets and themselves, when they are not.  Defendants concealed material facts that would have been important to Plaintiff and Class Members in deciding whether to purchase the Seresto Collars.  Defendants' concealment was knowing and made with intent to deceive Plaintiff and Class Members to rely on it.  Further details of Defendants' efforts to conceal their above-described unlawful conduct are in their possession, custody, and control, to the exclusion of

Plaintiff and Class Members. Plaintiff and Class Members could not have reasonably discovered the fact that the Products pose serious safety risks at the time of their purchase.  As a result of Defendants active concealment of the hazards associated with use of the Seresto Collars, any and all applicable statutes of limitation otherwise applicable to the allegations herein have been tolled.

60.     Estoppel. Defendants were and are under a continuous duty to disclose to Plaintiff and Class Members the true character, quality, and nature of the Products. At all relevant times, and continuing to this day, Defendants knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Seresto Collars. The details of Defendants' efforts to conceal its above-described unlawful conduct are in their possession, custody, and control, to the exclusion of Plaintiff and Class Members. Plaintiff reasonably relied upon Defendants' knowing, affirmative, and/or active concealment and affirmative misrepresentations. Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

61.     Equitable Tolling. Defendants took active steps to conceal the fact that they wrongfully, improperly, illegally, and repeatedly designed, manufactured, marketed, distributed, and sold the Products, which posed serious safety risks to consumers and pets. The details of Defendants' efforts to conceal their above-described unlawful conduct are in their possession, custody, and control, to the exclusion of Plaintiff and Class Members. When Plaintiff learned about this material information, he exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing his claims. Defendants fraudulently concealed their above-described wrongful acts. Should such tolling be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## **CLASS ACTION ALLEGATIONS**

62.     Plaintiff brings this Action on behalf of himself and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of members of the following Class:

Florida Class:
All persons within the State of Florida who purchased the Products from the beginning of the applicable statutory period through present (the "Class").

63.     Excluded from the Class are Defendants, any of their respective members, affiliates, subsidiaries, officers, directors, employees, successors or assigns, the judicial officers, and their immediate family members, as well as the Court staff assigned to this Action. Plaintiff reserves the right to modify or amend Class definitions as appropriate during the pendency of this Action.

64.     Plaintiff seeks relief only for economic damages, injunctive and equitable relief on behalf of himself and similarly situated consumers. He specifically disclaims any intent or right to seek recovery for personal injuries, wrongful death, or emotional distress on his own behalf or on behalf of the Class.

65.     This Action has been brought and may be properly maintained as a class action under the criteria of Federal Rule of Civil Procedure 23.

66.     Numerosity – Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While the precise number of Class numbers is unknown at this time, there are likely tens of thousands of putative Class Members throughout the United States who are ascertainable through discovery.

67.     Commonality and Predominance – Fed. R. Civ. P. 23(a)(2), 23(b)(3). This action involves questions of law and fact common to the Class, which predominate over any individual questions. These common legal and factual questions include, but are not limited to, the following:

a.     Whether Seresto Collars pose risks to pets, pet owners, and others, as described herein;

b.     Whether Defendants engaged in the conduct alleged herein;

c.     Whether Defendants designed, manufactured, marketed, distributed, sold, or otherwise placed Seresto Collars into the stream of commerce in the United States knowing that they posed the risks described herein;

d.     When Defendants first learned that Seresto Collars posed the risks described herein;

e. Whether Defendants intentionally concealed the risks posed by Seresto Collars, as described herein;

f. Whether Defendants breached warranties with purchasers when they marketed and sold Seresto Collars, which posed known but undisclosed risks, as described herein;

g. Whether Plaintiff and other Class Members have been harmed by the fraud alleged herein;

h. Whether Defendants were unjustly enriched by their deceptive practices; and

i. Whether Plaintiff and the members of the proposed Class are entitled to declaratory, equitable, or injunctive relief.

68. <u>Typicality – Fed. R. Civ. P. 23(a)(3)</u>. Plaintiff's claims are typical of the other Class Members because Plaintiff, as well as the members of the proposed Class, uniformly paid for Defendants' toxic and poisonous Products at retail. Plaintiff and the members of the proposed Class reasonably relied on the representations made by Defendants prior to making their purchase of the Products at-issue. Plaintiff and the members of the proposed Class paid for Defendants' Products at retail and would not have purchased them (or would have paid significantly less for them) if they had known that Defendants' representations were untrue relating to the safety of the Products.

69. <u>Adequacy of Representation – Fed. R. Civ. P. 23(a)(4)</u>. Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Class Members whom he seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel. Plaintiff's counsel believes they are best suited to lead this litigation, as the firms who are listed on this Class Action Complaint are all experienced in class action consumer fraud litigation. Each of the firms listed have been practicing said litigation for at least the past decade and have collected millions of dollars in settlements and verdicts on behalf of injured consumers.

70.     <u>Superiority of Adjudication as a Class Action – Fed. R. Civ. P. 23(b)(3)</u>. Because of the aforementioned allegations, and in an effort to preserve judicial economy, this case will be best maintained as a class action, which is superior to other methods of individual adjudication of these claims. Plaintiff and his counsel feel this matter is best maintained as a class action because of the large number of consumers affected by the alleged violations of law as well as the low number of economic damages being sought by Plaintiff and members of the proposed Class support that this dispute would be best resolved on a class-wide basis as opposed to through individual cases.

71.     The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

72.     <u>Certification of Specific Issues – Fed. R. Civ. P. 23(c)(4)</u>. To the extent that a Class does not meet the requirements of Fed. R. Civ. P. 23(b)(2) or 23(b)(3), Plaintiff seeks certification of issues that will drive this litigation toward resolution.

73.     <u>Declaratory and Injunctive Relief – Fed. R. Civ. P. 23(b)(2)</u>. Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class Members as a whole.

74.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate and as the parties engage in discovery.

75.     Notice of a certified class action and of any result or resolution of the litigation can be provided to Class Members by first-class mail, email, or publication, or such other methods of notice as deemed appropriate by the Court.

76.     Plaintiff does not anticipate any difficulties in the management of this action that would preclude its maintenance as a class action.

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Proposed Class)**

77.     Plaintiff brings this count on behalf of himself and the Class and repeats and re-alleges paragraphs 1-76, as if fully included herein.

78.     Defendants marketed, sold, and/or distributed the Seresto Collars, and Plaintiff and Class Members purchased the Seresto Collars.

79.     Defendants represented in their marketing, advertising, and promotion of the Seresto Collars that their Products provided a safe means of flea and tick prevention for consumers' pets, and failed to disclose that the Products posed serious safety risks to consumers and their pets.

80.     Defendants made these representations to induce Plaintiff and Class Members to purchase the Seresto Collars, which did in fact induce Plaintiff and Class Members to purchase these Products.

81.     Accordingly, Defendants' representations and omissions that the Seresto Collars provided a safe means of flea and tick prevention for consumers' pets, while refusing to disclose the serious safety risks posed by the Products to consumers and their pets, formed a part of the bargain between Defendants and Plaintiff and Class Members.

82.     The Seresto Collars did not conform to Defendants' representations and warranties that the Products provided a safe means of flea and tick prevention for consumers' pets because at all times relevant the Seresto Collars posed serious, continuous safety risks to consumers and their pets.

83.     As a direct and proximate result of Defendants' breaches of their express warranties and their failure to conform to the Seresto Collars' express representations, Plaintiff and Class Members have been damaged. Plaintiff and Class Members have suffered damages in that they did not receive the safe product they specifically paid for and that Defendants warranted the Seresto Collars to be.

<u>**SECOND CAUSE OF ACTION**</u>
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of the Proposed Class)**

84.     Plaintiff brings this count on behalf of himself and the Class and repeats and re-alleges paragraphs 1-76, as if fully included herein.

85.     Defendants provided Plaintiff and Class Members with implied warranties that the Seresto Collars were merchantable and fit for the ordinary purposes for which they were sold—namely, as a safe means of flea and tick prevention for consumers' pets.

86.     Defendants marketed, sold, and/or distributed the Seresto Collars, and Plaintiff and Class Members purchased the Seresto Collars.

87.     Plaintiff and Class Members bring this claim for breach of the implied warranty of merchantability on behalf of themselves and other consumers who purchased the Seresto Collars for their pets.

88.     Defendants have breached the implied warranties of merchantability that they made to Plaintiff and Class Members. For example, Defendants impliedly warranted that the Seresto Collars were safe, that they were free from defects, that they were merchantable, and that they were fit for the ordinary purpose for which flea and tick preventatives are sold.

89.     When sold by Defendants, the Seresto Collars were unsafe, were not merchantable, did not pass without objection in the trade as a flea and tick preventative for pets, were not of adequate quality within that description, were not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on the container or label.

90.     As a result of Defendants' breaches of implied warranties, Plaintiff and Class Members did not receive the benefit of their bargain and suffered damages at the point of sale stemming from their overpayment for the Seresto Collars, which posed serious safety risks to those who purchased them and to their pets.

91.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT
### (On Behalf of the Proposed Class)

92.     Plaintiff brings this count on behalf of himself and the Class and repeats and re-alleges paragraphs 1-76, as if fully included herein.

93.     Plaintiff and Class Members conferred benefits on Defendants by purchasing the Seresto Collars, but they did not receive what they purchased—namely, a safe means of flea and tick prevention for their pets. Plaintiff and Class Members conferred benefits on Defendants through their purchases of the Products, but they did not receive the benefit of their bargain in return.

94.     Defendants have knowledge of their receipt of such benefits.

95.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of the Seresto Collars.

96.     Defendants' retaining these moneys under these circumstances is unjust and inequitable because Defendants falsely and misleadingly represented that Seresto Collars provided a safe means of flea and tick prevention when, in fact, the Seresto Collars posed serious safety risks to consumers and their pets.

97.     Defendants' misrepresentations have injured Plaintiff and Class Members because they would not have purchased the Seresto Collars, or else would have paid significantly less for them, had they known the true facts regarding the ingredients within Seresto Collars.

98.     Because it is unjust and inequitable for Defendants to retain such non-gratuitous benefits conferred on them by Plaintiff and Class Members, Defendants must pay restitution to Plaintiff and Class Members, and other such relief as justice demands as ordered by the Court.

99.     As a result of Defendants' breaches of implied warranties, Plaintiff and Class Members did not receive the benefit of their bargain and suffered damages at the point of sale stemming from their overpayment for the Seresto Collars, which posed serious safety risks to those who purchased them and to their pets.

100.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE FLORIDA**
**DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(Fla. Stat. §§ 501.201, *et seq.*)**
**(On Behalf of the Proposed Class)**

101.    Plaintiff brings this count on behalf of himself and the Class and repeats and re-alleges paragraphs 1-76, as if fully included herein.

102.    This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, *et seq.* The stated purpose of FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

103.    Plaintiff and Class Members are "consumers," and the transactions at issue in this Complaint constitute "trade or commerce," as those terms are defined in Fla. Stat. § 501.203(7)-(8).

104.    FDUTPA declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

105.    Defendants manufacture, distribute, market, advertise and sell the Seresto Collars.

The Seresto Collars are "goods" within the meaning of FDUTPA.

106.    For the reasons discussed herein, Defendants violated and continue to violate FDUTPA by engaging in the conduct described herein, which are unconscionable, deceptive, unfair acts or practices proscribed by FDUTPA. Defendants' acts and practices, including their omissions, were likely to, and did, in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

107.    Defendants engaged in the following unconscionable, unfair, deceptive, and unconscionable practices:

a.    Defendants manufactured, distributed, marketed, advertised and sold the Seresto Collars, which posed serious safety risks to consumers and their pets, and which serious safety risks existed when the Products left Defendants' control and at the point of sale;

b.    Defendants knew, or otherwise should have known, that the Products posed serious safety risks to consumers and their pets, but failed to disclose or concealed these risks from consumers;

c.    Defendants knew the serious safety risks posed by the Seresto Collars were unknown to consumers, and would not be easily discovered by Plaintiff and Class Members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Products;

d.    Defendants warranted that the Seresto Collars are part of a pet's regular health regimen and provide a safe means of flea and tick prevention, when, in fact, the Products pose serious safety risks to consumers and their pets; and

e.    Defendants represented to consumers, including Plaintiff and Class Members, that the Products are safe and fit for the use for which they were intended, despite the fact that Defendants knew, or otherwise should have known, that the Products were unsafe and unfit as part of a pet's health regimen, posing serious safety risks to consumers and their pets.

108.     Defendants warranted and represented that the Seresto Collars were safe and were suitable for their intended use. However, the Products, which are marketed as being part of a pet's regular health regimen, are unsafe as designed, manufactured, marketed, and sold. The Products posed serious, continuous safety risks to consumers and their pets.

109.     Defendants had exclusive knowledge of material facts concerning the serious safety risks posed by the Products to consumers and their pets.

110.     Defendants knew, or otherwise should have known, that the Seresto Collars posed serious safety risks to consumers, including Plaintiff and Class Members, and their pets based upon: (1) their own internal testing and surveys, (2) EPA testing and surveys, (3) numerous consumer complaints lodged directly with Defendants, (4) numerous consumer complaints lodged to retailers, (5) numerous consumer complaints and reports lodged with the EPA, (6) numerous consumer complaints on online fora, and (7) media reports, dating back to 2012.

111.     Despite Defendants' exclusive knowledge of material facts concerning the existence of the serious safety risks posed by Seresto Collars, Defendants actively concealed the serious safety risks from consumers by failing to disclose the serious safety risks to consumers.

112.     Despite Defendants' exclusive knowledge of material facts concerning the existence of the serious safety risks posed by Seresto Collars, Defendants denied the existence of the serious safety risks to consumers. Recently, when an investigative exposé reported on these concealed safety risks, and when Representative Raja Krishnamoorthi called for Defendants to voluntarily recall the Products because they posed such serious safety risks to consumers and their pets, Defendants denied that the Products could pose such serious safety risks to consumers and their pets and continued to conceal the true existence of such serious safety risks, despite their knowledge.

113.     Plaintiff purchased Seresto Collars for his dog, Romeo, after performing research regarding a safe flea and tick preventative, as part of his dog's health regimen. After this research, Plaintiff purchased the Products, believing them to be a safe means of providing flea and tick prevention for his dog, based upon Defendants' representations about the Products. Plaintiff was unaware of the serious safety risks the Products posed to consumers and their pets—and more

specifically to himself and his dog, Romeo—at the time he purchased the Products and had no reason to know of these serious safety risks posed by the Products at the time of his purchase.

114.   Defendants' practices described herein were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiff and Class Members, would not have purchased the Seresto Collars, or would have paid significantly less for them, had they known that the Products posed serious safety risks to them and their pets.

115.   Defendants' violations described herein present a continuing risk to Plaintiff and the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

116.   As a result of Defendants' misconduct, Plaintiff and Class Members have been harmed and suffered actual damages in that they purchased the Seresto Collars, which pose serious safety risks.

117.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and Class Members have been damaged, and are entitled to recover actual damages to the extent permitted by law in an amount to be proven at trial.

118.   Plaintiff seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, and seeks attorneys' fees and any other just and proper relief available under FDUTPA and applicable law.

## **JURY DEMAND AND PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks a judgment:

- Ordering Defendants, in the form of an injunction, to cease the sale of the affected Products;

- Declaring this Action as a class action representing the Class as defined herein pursuant to Federal Rule of Civil Procedure 23, designating Plaintiff as representative for said Class, and appointing the undersigned counsel of record as class counsel;

- Declaring Defendants' conduct unlawful under the statutes and causes of action pleaded herein;

- Awarding damages pursuant to the statutes and the causes of action pleaded herein;

- Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts;

- Awarding pre- and post-judgment to Plaintiff and members of the proposed Class, if applicable; and, ordering further relief as this Court deems just and proper.

Plaintiff demands a trial by jury of all claims triable in this Complaint. Plaintiff also respectfully requests leave to amend this Complaint as necessary.

DATED: April 9, 2021                                Respectfully submitted,


                                                    s/Rachel Soffin
                                                    Rachel Soffin (FL Bar # 18054)
                                                    Jonathan B. Cohen (FL Bar # 27620)
                                                    William A. Ladnier*
                                                    **GREG COLEMAN LAW PC**
                                                    First Tennessee Plaza
                                                    800 S. Gay Street, Suite 1100
                                                    Knoxville, TN 37929
                                                    Tel: (865) 247-0080
                                                    Fax: (865) 522-0049
                                                    rachel@gregcolemanlaw.com
                                                    jonathan@gregcolemanlaw.com
                                                    will@gregcolemanlaw.com

                                                    Alex R. Straus*
                                                    **GREG COLEMAN LAW PC**
                                                    16748 McCormack Street
                                                    Los Angeles, CA  91436
                                                    Tel: (917) 471-1894
                                                    alex@gregcolemanlaw.com

                                                    *pro hac vice* application forthcoming

                                                    *Attorneys for Plaintiff*
                                                    *and the Proposed Class*